[No. 11706. In Bank.—September 5, 1889.]

THOMAS M. GODFREY, Assignee, etc., Appellant, *v.* EDWARD H. MILLER, Jr., Respondent.

Insolvency—Transfer not in Usual Course of Business—Fraud.— A transfer of property made by a debtor to his creditor, not in the usual and ordinary course of business, is *prima facie* fraudulent within the meaning of the insolvency act, and is sufficient to charge the transferee with notice of the insolvency of the transferrer.

Id.—Transferee when Charged with Notice of Transferrer's Insolvency.—A transfer of a horse and buggy, made by a debtor to his creditor on a Sunday, and accepted by the latter without trying the

horse, and with knowledge that the debtor's other property had been attached on the preceding day, and that another attachment was expected to be made on the following day, is not in the usual and ordinary course of business; and the transferee, under such circumstances, will be charged with notice of the transferrer's insolvency, and with an intent to hinder, delay, and defraud other creditors of the transferrer.

ID. — PAYMENT OF INDEBTEDNESS ARISING FROM FIDUCIARY RELATION. — The transfer is not relieved of its fraudulent character by the mere fact that it was made in part payment of an indebtedness due to the transferee for moneys held by the transferrer in a fiduciary capacity.

APPEAL from a judgment of the Superior Court of Alameda County, and from an order refusing a new trial.

The facts are stated in the opinion of the court.

*S. L. Rogers,* and *John Reynolds,* for Appellant.

*J. E. Foulds,* for Respondent.

Fox, J.—This action was brought by plaintiff, as assignee of the estate of an insolvent debtor, to recover the possession or value of a horse and carriage, alleged to have been transferred by the insolvent to defendant, in violation of section 55 of the insolvent act.

The case was tried by the court, and judgment given for the defendant, from which, and from an order denying a new trial, the plaintiff appealed.

The following is one of the findings:—

"10. That the defendant took and received the property described in the complaint from the possession of said A. C. Gilbert within ten days before the filing of his petition as an insolvent debtor as aforesaid, to wit, on the fifteenth day of March, A. D. 1885, but that the same was purchased by the defendant from the said Gilbert for a valuable consideration in good faith, and without intent to hinder, delay, or defraud any creditor or creditors of said Gilbert, or to violate any provision of the insolvent act of 1880; that at the time of said sale and delivery of said property, said defendant had no reason-

able cause to believe that said A. C. Gilbert was insolvent, and that such transfer of said property was made with a view to prevent his property from coming to his assignee in insolvency, or to prevent the same from being distributed ratably among his creditors, or to defeat the object of, or in any way hinder, impede, or delay the operation of, or to evade any of the provisions of said act."

It is this finding particularly that is attacked, on the ground that the evidence is insufficient to justify the same.

From other findings it appears that on and prior to the thirteenth day of March, 1885, said A. C. Gilbert had collected moneys for the defendant to the amount of more than $800, including $607 which he had so collected on a note belonging to defendant, and of which last-named collection the defendant was not informed until on the said thirteenth day of March; that the moneys so collected by Gilbert for defendant had been used by Gilbert for his own benefit, without the knowledge or consent of defendant; that on the 14th of March defendant notified Gilbert by letter that he should call on him for the amount of said last collection; that on the 15th of March, which was Sunday, Gilbert went to the defendant, taking with him the horse and carriage described in the complaint, and informed defendant that he had none of defendant's money, and could not pay him; that certain of his property had been theretofore attached, and he had released the same; that on the day before (the 14th) it had again been attached by another creditor, and that he had been unable to release the same, and that he expected a further attachment would be levied on the following day (the 16th), and that if he were allowed time he could work out of his difficulties. He thereupon proposed to defendant that he should take the horse and carriage in part payment of the amount which he had collected on the $600 note, and after some negotiations

the defendant agreed to take the same and credit Gilbert
with the sum of $450 therefor, and the same was there-
upon, on the said fifteenth day of March, delivered to
the defendant, who had ever since retained the same.
Defendant was not informed by Gilbert that he contem-
plated filing a petition in insolvency, and he knew
nothing of Gilbert's financial difficulties, except what
was told him by Gilbert as aforesaid. Gilbert had been
doing a large business, and had theretofore been believed
by defendant to be perfectly solvent.

The court also found that the defendant did not try
the horse before making the purchase, and that he would
not, under ordinary circumstances, have made such a
purchase without first trying the horse.

The only evidence claimed to be in support of the
tenth finding was that given by the defendant, as fol-
lows: —

"Q. Did you know, or did you have any cause to
believe, that the transfer of this horse and buggy by
Mr. Gilbert to yourself was made with a view to prevent
the same from coming to his assignee in insolvency, or
to prevent the same from being distributed ratably
among his creditors, or to defeat the object of, or in any
way to hinder, impede, or delay the operation of, or to
evade any of the provisions of the insolvency act? A.
No."

Before the answer was given the question was objected
to as irrelevant and incompetent, and to the order of the
court overruling the objection, an exception was duly
taken. That exception was well taken. In the form in
which the question was put, it should not have been
allowed. There were five questions in one. Which
question should he answer? Which one did he answer?
Whether he "had any reason to believe" was a question
for the court, and not for the witness. Witnesses are to
testify to facts, and from them the court is to determine
what belief may properly be founded upon them. But

in the view we take of this case, this error becomes immaterial.

The witness further testified that Gilbert had the horse and carriage long before he collected the money for him; and also that he, the witness, took the horse and carriage to save himself.

In view of this evidence, understanding that it is all there was on that subject, and of all the findings in the case, we do not see how this tenth finding can stand. If the transfer was not made in the usual and ordinary course of business, the statute makes that fact itself *prima facie* evidence of fraud. This certainly was not. It was made on a Sunday, between one attachment levied on Saturday and another that was expected on Monday, of both which facts the defendant was advised. The defendant took the property "to save himself," according to his own testimony, and also without trying it,— a thing which he says himself he would not do under ordinary circumstances.

It is true, *prima facie* evidence may always be overcome by other sufficient proof; but under the circumstances developed here, we do not think there is other sufficient, or any, proof to sustain this finding. Even if Gilbert did not tell him in so many words that he contemplated filing a petition in insolvency, he must have had good reason to believe, from the facts which are found and undisputed, that Gilbert was in an insolvent condition, and it is certain that he took the property to prevent it being attached by some other creditor, and therefore the taking was contrary to the tenth finding, with intent to hinder, delay, and defraud any creditor or creditors of Gilbert. It was taken "to save himself," as against anticipated proceedings which would subject it to the claims of other creditors,—a fact not consonant with the "good faith" found by the court. Two days afterward, the petition in insolvency was filed. It is hardly possible that Gilbert did not contemplate it on

the Sunday when this singular transaction occurred, and enough was then brought home to the knowledge of defendant to put him upon inquiry and to make him know that a preference was offered to him in fraud of other creditors. He was, in fact, put upon notice of the insolvency of Gilbert. "The fact that a sale of goods by an insolvent is not made in the usual and ordinary course of business is sufficient to charge the purchaser with notice of the insolvency of the seller." (*Ohleyer* v. *Bunce,* 65 Cal. 544.)

But it is urged that the defendant did not stand in the same relation to Gilbert that other creditors did, and therefore had a right to this preference; that the debt due to him was for moneys held by Gilbert in a fiduciary capacity, thus creating a liability from which Gilbert could not be discharged in insolvency. To our minds that point militates against the defendant, rather than in his favor. If he was better protected than the others, all the more reason why he should not be a party to an attempt to defraud them.

Judgment and order appealed from reversed.

WORKS, J., SHARPSTEIN, J., and BEATTY, C. J., concurred.

THORNTON, J., concurring.—I concur in the judgment. The findings show that the judgment should be reversed. (See *Washburn* v. *Huntington,* 78 Cal. 573.)

PATERSON, J., dissented.